SCOTT D. CHENEY (6198)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: scheney@utah.gov

*Attorney for Richard Garden and Kennon Tubbs*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NICHOLAS LEAR,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>RICHARD GARDEN, M.D., KENNON TUBBS, M.D., JOHN DOES 1-10,<br><br>　　　　　　　Defendants. | **MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**<br><br><br>Case No. 2:13-cv-00096-CW<br><br>Judge Clark Waddoups |

## <u>MOTION</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and DUCivR 56-1, Defendants, Richard Garden and Kennon Tubbs (the "State Defendants"), by and through counsel, Scott D. Cheney, Assistant Utah Attorney General, submit this Motion for Summary Judgment and Supporting Memorandum. Summary judgment is appropriate because, as a matter of law, the State Defendants are entitled to qualified immunity from this lawsuit. The State

Defendants did not violate a clearly established right and were not deliberately indifferent to Plaintiff's rights. Additionally, there is no genuine issue of material fact. The State Defendants performed their jobs reasonably and professionally. The State Defendants are entitled to summary judgment as a matter of law.

## MEMORANDUM

### INTRODUCTION AND BACKGROUND

1. At the time the events of this lawsuit took place, Plaintiff was an inmate at the Utah State Prison ("USP") in Draper, Utah. (Compl. ¶ 1.)

2. Defendant Dr. Garden was Director of Medical Services at USP at all times relevant to events complained of in Plaintiff's Complaint.

3. Although he is a physician and was supervisor of USP medical staff at times relevant, Dr. Garden was never Plaintiff Lear's treating physician. Dr. Garden did not attend to, examine, diagnose or treat Lear, and was not involved in any decisions regarding Lear's diagnosis or treatment plan. (Tubbs Decl. ¶ 18)

4. Defendant Dr. Tubbs has been a physician at USP since 1999 and, at times relevant to this lawsuit, familiar with Plaintiff Lear's medical and general health condition, and was one of USP medical staff who examines, diagnosed, and took part in Plaintiff's treatment plan. (Tubbs Decl. ¶ 17,18)

5. Plaintiff allegedly injured his hip while exercising and performing leg presses on a weight machine at the USP. (Compl. ¶ 6.)

6. Eighteen months after the injury allegedly occurred, Plaintiff reported his injury to USP medical staff and the State Defendants. (Tubbs Decl. ¶ 6; Lear Medical Records 000013, 000079.)

7. The State Defendants advised Plaintiff to adjust his workout regimen to allow his hip to rest and heal. Plaintiff refused to follow the State Defendant's advice, so the State Defendants began limiting Plaintiff's access to the gym. (Tubbs Decl. ¶ 9.)

8. The State Defendants referred Plaintiff to orthopedic specialists at the University of Utah Medical Center ("UMC") to receive medical evaluations and MRIs of Plaintiff's hip. (Tubbs Decl. ¶ 11; Roberts Decl. ¶ 6; Compl. ¶ 10.)

9. Additionally, the State Defendants monitored Plaintiff, responded to all of Plaintiff's requests for medical care, and prescribed various medications to assist Plaintiff. (Tubbs Decl. ¶ 15; Roberts Decl. ¶ 8.)

10. In 2010 Plaintiff was seen twelve times; in 2011he was seen four times; in 2012 he was seen four times; in 2013 he was seen three times; in 2014 he was seen four times; and so far in 2015, he has been seen three times." (Roberts Decl. ¶ 7.)

11. Despite the alleged severity of Plaintiff's hip injury, Plaintiff was still able to walk about the prison without assistance, recreate, workout, and participate in a band without any observable pain or limitations. (Tubbs Decl. ¶ 13.)

12. Plaintiff's prison sentence was terminated August 17, 2015, and Plaintiff was released from custody of Utah Department of Corrections ("UDOC.")  Since then, Plaintiff has not given UDOC or the Court notice of his forwarding address.

## STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

### I.      Qualified Immunity

When a defendant asserts qualified immunity at summary judgment, the standard Rule 56 burden shifts from the defendant movant to the plaintiff. Plaintiff has the heavy burden to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quotations omitted). Here, Plaintiff cannot meet that burden.

### A.  No Violation of a Constitutional Right

#### 1.   No Eighth Amendment—Deliberate Indifference to Plaintiff's Medical Needs—Violation.

In order to state a cognizable claim for failing to provide medical attention, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference "involves both an objective and subjective component. The objective component is met if the deprivation is sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10thh Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10thh Cir. 1980) (further quotation omitted)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

     **a.  Plaintiff did not face substantial risk of serious harm and the State Defendants did not wantonly disregard or fail to take reasonable measures to abate the risk.**

13. In 2010, Plaintiff began complaining about a left hip injury he sustained while exercising in the USP gym facilities. (Tubbs Decl. ¶ 3; Roberts Decl. ¶ 4; Compl. ¶ 6.)

14. In June 2010, Dr. Tubbs of the USP referred Plaintiff to UMC for an MRI on Plaintiff's left hip. (Tubbs Decl. ¶ 11; Roberts Decl. ¶ 5; Lear Medical Records 000006.)

15. Plaintiff received a second MRI on October 1, 2010. The second MRI indicated that Plaintiff had a subchondral cyst. (Tubbs Decl. ¶ 11; Roberts Decl. ¶ 6; Lear Medical Records 000021, 000030, 000205.)

16. Since 2010, Plaintiff has received yearly orthopedic examinations of his left hip at UMC. (Tubbs Decl. ¶ 12; Roberts Decl. ¶ 6; Lear Medical Records 000007, 000042, 000205, 000178, 000148, 000216.)

17. Plaintiff has never been diagnosed with avascular necrosis ("AVN"), the condition he has claimed he has. (Tubbs Decl. ¶ 12; Roberts Decl. ¶ 6; Lear Medical Records 000148-149, 000177, 000179, 000205.)

18. In 2010 Plaintiff was seen twelve times, in 2011; he was seen four times, in 2012; he was seen four times, in 2013; he was seen three times, in 2014; he was seen four times; and so far in 2015, he has been seen three times." (Roberts Decl. ¶ 7.)

19. Additionally, USP medical staff and the State Defendants have responded to Plaintiff's health care requests regarding his hip, and prescribed Tramadol and other pain medications to assist Plaintiff cope with the pain. (Tubbs Decl. ¶ 14; Roberts Decl. ¶ 7; Compl. ¶ 13.)

20. USP medical staff and the State Defendants strictly monitored Plaintiff's use of prescribed medications because Plaintiff had a history of abusing his prescriptions. (Tubbs Decl. ¶ 15; Lear Medical Records 000115, 000132-133, 000050, 000074.)

21. At no time has Plaintiff's hip condition medically required the use of a crutch, cane, or other walking-assistance device. Nor did he require surgery to repair or replace his hip. Plaintiff was continuously observed by USP officers walking to and from the gym and medical unit without pain or difficulty. (Tubbs Decl. ¶¶ 10, 16.)

22. In Plaintiff's last orthopedic examination and MRI, UMC stated that the cyst was "poorly visualized," and that the cyst appeared to be healing and filling in with bone. (Tubbs Decl. ¶ 12; Roberts Decl. ¶ 6; Lear Medical Records 000216.)

**B.  There is No Supervisory Liability Under Section 1983.**

23. Dr. Garden is sued only for his role as a supervisor, and not for any affirmative act or omission. (Amended Compl. ¶ 2)

24. Dr. Garden did not examine, diagnose, or treat Plaintiff's hip condition, and had no involvement in decisions regarding Plaintiff's hip treatment or treatment plan. (Tubbs Decl. ¶ 18)

## LEGAL STANDARDS

### I.    Summary Judgment and Qualified Immunity

Under Rule 56, the Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When a defendant asserts qualified immunity at summary judgment, the initial Rule 56 burden shifts away from the movant to the plaintiff to show first that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quotations omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

Here, the State Defendants are entitled to qualified immunity from Plaintiff's lawsuit. As a matter of law, "not every claim of inadequate medical treatment rises to the level of an Eighth Amendment violation." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Plaintiff's dissatisfaction regarding the treatment and medication he received simply does not rise to the level of "cruel and unusual punishment." The State Defendants provided consistent and medically appropriate treatment to Plaintiff. The medical decisions of the State Defendants were reasonable and professional, and never posed "a substantial risk of serious harm" to Plaintiff. The State Defendants are entitled to qualified immunity and, therefore, summary judgment is appropriate as a matter of law.

**ARGUMENT**

**I.    There is no Supervisory Liability Under § 1983; Plaintiff's Complaint Fails to Allege an Affirmative Link or a "Plausible" Claim Against Dr. Garden.**

It is well settled in the Tenth Circuit that "under § 1983, government officials are not vicariously liable for the misconduct of their subordinates." *Serna v. Colo. Dep't. of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Supervisors are liable only "for their own culpable involvement in the violation of a person's constitutional rights." *Id.* Section 1983 liability is not available under the doctrine of *respondeat superior. Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691-92 (1978).

Rather, section 1983 requires a showing of an "affirmative link" between the acts of the defendant and the alleged constitutional violation. To establish a supervisor's liability under § 1983 [plaintiffs] must show that "an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)). Simply stating that a defendant was a supervisor will not suffice under a section 1983 claim, for "supervisor status by itself is insufficient to support liability." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Put another way, a plaintiff may not rely on a defendant's job title to establish liability.

In his complaint, Plaintiff only asserts that Dr. Garden was "acting under color of state law in that he is the Medical Director at [USP]." (Compl. ¶ 2.) As the Medical Director, any liability attributed to Dr. Garden in his individual capacity can only be through his role as a supervisor. In this case, Dr. Garden was not personally involved in Plaintiff's diagnosis and

treatment, (Tubbs Decl. ¶ 18.) and Plaintiff has not alleged sufficient facts to an affirmative link between any act or omission of Dr. Garden and the injuries Plaintiff complains of.  The Complaint, therefore, does not state a plausible claim against Dr. Garden.

The Supreme Court of the United States has held that a complaint "demands more than an unadorned, 'the-defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Naked assertions, devoid of further factual enhancement" also do not suffice. *Id.* Rather, the complaint must contain "sufficient factual matter . . . to state a claim that is plausible on its face." *Id.* Plaintiff's complaint also fails in this respect.

Here, the complaint does not allege that Dr. Garden personally participated in Plaintiff's medical care. Rather, Dr. Garden is named as a defendant simply because he is a supervisor. (Compl. ¶ 2.) As a matter of law, there is no supervisor liability under section 1983. Accordingly, Plaintiff's complaint fails to state any plausible claims against Dr. Garden and should be summarily dismissed.

**II.     The State Defendants are Entitled to Qualified Immunity.**

**A.  The State Defendants were not "Deliberately Indifferent" to Plaintiff's Medical Needs.**

To succeed on an Eighth Amendment claim, Plaintiff must allege acts or omissions harmful enough to show deliberate indifference that offends "evolving standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Eighth Amendment proscribes only deliberate indifference that constitutes the "unnecessary and wanton infliction of pain." *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976)). Moreover, Plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious* medical needs."

*Estelle*, 429 U.S. at 104 (emphasis added). Plaintiff must also show that Defendant's actions were more than negligent. "A negligent failure to provide adequate medical care, even to the point of medical malpractice, does not rise to the level of a constitutional violation." *Id.*

The deliberate indifference standard articulated in *Estelle* has an objective component asking whether the alleged deprivation was "sufficiently serious," and a subjective component asking whether the defendant official "knows of and disregards an *excessive* risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). The subjective component necessarily questions whether prison officials acted with a "sufficiently culpable state of mind." *Clemmons v. Bohannon*, 956 F.2d 1523, 1525-26 (10th Cir. 1992); *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1993); *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993). "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate the risk." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Thus, to state an Eighth Amendment claim, Plaintiff must show he suffered from a serious condition that Defendants knew about and ignored, and that by ignoring Plaintiff's condition, or failing to take reasonable steps to alleviate the risk, Defendants caused Plaintiff serious physical harm or the unnecessary, wanton infliction of pain.

Here, Plaintiff's claims fail because the Defendants did not disregard a substantial risk of serious harm to Plaintiff's health or safety. Rather, the USP medical staff, including Dr. Tubbs, responded to all of Plaintiff's requests for medical care and referred Plaintiff to University of Utah Medical Center ("UMC") to be evaluated annually by orthopedic specialists. (Tubbs Decl. ¶ 11; Roberts Decl. ¶ 7.) Plaintiff continued to receive a yearly orthopedic

examination of his left hip at UMC, and at no time was he diagnosed with AVN, nor was Plaintiff medically required to use a crutch, cane, or other walking-assistance device. (Tubbs Decl. ¶ 12, 16; Roberts Decl. ¶ 6.) Additionally, UMC records confirm that Plaintiff does not need further treatment for his hip, does not require surgery, and that the cyst was incidental, not a result of any injury. (Tubbs Decl. ¶ 17.) Despite Plaintiff's concerns, there is no pathological evidence of progressive disease or AVN in his hip, and Plaintiff has not, at any time, been in substantial risk of serious harm. *Id.*

> **B. Plaintiff Received Prompt, Frequent, and Reasonable Medical Care. Plaintiff's Disagreement with the Medical Diagnosis and Treatment Does Not Amount to Deliberate Indifference.**

Where a prisoner has received medical attention, and the only dispute is over the adequacy of the treatment, courts are generally reluctant to second-guess the professional medical judgment. *See Maez v. Merrill*, No. 2:07-CV-986 TC, 2008 WL 4396011, at *3 (D. Utah September 23, 2008) (unpublished) (quoting *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)); *see also Fitzke v. Chappell*, 468 F.2d 1072, 1076 (6th Cir. 1972).

It is well settled in the Tenth Circuit that a mere difference of opinion between a prisoner and prison medical staff as to diagnosis or treatment cannot support a deliberate indifference claim. *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *LeDoux v. Davies*, 961 F.2d 1536, 1531 (10th Cir. 1992); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). An Eighth Amendment violation occurs only when the medical treatment given an inmate is so grossly incompetent, inadequate, or excessive as to "shock the conscience or be intolerable to fundamental fairness." *Whitehead v. Burnside*, No. 10-11911, 2010 WL 4629001, 403 F. App'x 401, 403 (unpublished) (11th Cir. Nov. 17, 2010) (quoting *Rogers v. Evans*, 792 F.2d 1052,

1058 (11th Cir. 1986)). The inmate's belief that he should have received different treatment does not establish "deliberate indifference." *Scott v. Gibson*, No. 01-7133, 2002 WL 1019151, 37 F. App'x 422, 423 (unpublished) (10thh Cir. May 21, 2002) (citing *Olson v. Stotts*, 9 F.3d at 1477).

Here, Plaintiff's claims are, at best, a "difference of opinion" as to his diagnosis and medical treatment. *See Olsen*, 9 F.3d at 1477. Despite Dr. Tubbs' and UMC medical providers' encouragement that Plaintiff modify his workouts to allow his alleged hip injury to heal, Plaintiff continued to maintain a rigorous training regimen. (Tubbs Decl. ¶ 8; Lear Medical Records 000013, 000027, 000043, 000060, 000083, 000113, 000114, 000216.) To the extent they were able to, the medical staff prescribed Plaintiff Tramadol and other pain medications, which Plaintiff used from 2010 to 2013. (Tubbs Decl. ¶ 14-15.) Plaintiff's history of abusing prescription medications, however, forced the State Defendants to discontinue Plaintiff's prescriptions at times. (Tubbs Decl. ¶ 15; Lear Medical Records 0000115, 000132-133, 000050, 000074.) Concerned for Plaintiff's well-being, the State Defendants limited Plaintiff's access to the gym and placed him on a gym restriction. (Tubbs Decl. ¶ 9.) Plaintiff alleged that he suffered from AVN and that the State Defendants were "delaying any necessary medical treatment." (Compl. ¶ 10, 12.) Plaintiff's medical records, however, clearly indicate that Plaintiff received adequate medical treatment upon request. (Tubbs Decl. ¶ 12; Roberts Decl. ¶ 7.) Additionally, Plaintiff's allegations that he did not receive "necessary medical treatment[s]," is nothing more than Plaintiff's differing opinion to the judgment and determinations made by licensed medical professionals, who consistently evaluated Plaintiff's conditions from 2010 to 2015. (Tubbs Decl. ¶ 16-18, Roberts Decl. ¶ 6-9.) The medical records

clearly illustrated the frequency of medical attention provided to Plaintiff. (See Ex.1 to Martinez Report; Roberts Decl. ¶ 7.)

The Tenth Circuit has rejected an inmate's Eighth Amendment claims in this situation. *Mosley v. Snider*, No. 00-6310, 2001 WL 281213, 10 F. App'x 663, 664-65 (unpublished) (10th Cir. March 22, 2001) (mere disagreement with the prescribed course of treatment did not give rise to an Eighth Amendment claim where physician determined medication was no longer needed and the inmate refused to accept prescribed alternative medication); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (rejecting prisoner's allegation of deliberate indifference where doctor would not prescribe medications recommended by a different doctor).

As a matter of law, observing a patient and offering treatment based on the provider's medical judgment, even if it is not what Plaintiff wants, does not rise to the level of deliberate indifference. *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). Additionally, where the record shows the inmate patient has been monitored, attended to, and treated often, the inmate cannot show deliberate indifference. *Wingfield v. Robinson*, No. 10-cv-01375, 2011 WL 5172567, at *10 (D. Colo. August 10, 2011) (subjective intent for deliberate indifference was not found where defendants responded to grievances, examined

plaintiff, and prescribed treatment upwards of fifteen times). Here, in addition to yearly visits

with orthopedic specialists at UMC, Plaintiff's medical records show that Plaintiff received

medical assistance from the USP medical staff and the State Defendants upward thirty times

from 2010 to 2015 examined Plaintiff. (Roberts Decl. ¶ 7.)

### C. The State Defendants are Entitled to Qualified Immunity Because the Treatment Plans for Plaintiff were Not Unreasonable and Do Not "Shock the Conscience."

As noted, Plaintiff has sued the State Defendants because he disagrees with the

diagnosis and treatment plans. (Compl. at pp. 3-4.) The United State Supreme Court has held

"[t]hat protection of qualified immunity applies regardless of whether the government official's

error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and

fact." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (marks and citations omitted). The

Tenth Circuit has similarly held that qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." *Gross v. Pirtle*, 245 F.3d 1151, 1155

(10th Cir. 2001). Qualified immunity may be denied if, on an objective basis, it is obvious that

no reasonably competent official would have concluded that the actions were constitutional.

*Malley v. Briggs*, 475 U.S. 335, 341 (1986). But "'if [officials] of reasonable competence could

disagree' about the lawfulness of the challenged conduct, then '[qualified] immunity should be

recognized.'" *Gomes*, 451 F.3d at 1136 (quoting *Malley*, 475 U.S. at 341). Further, where the

medical community disagrees as to the best course of treatment, an informed judgment as to the

appropriate treatment does not amount to deliberate indifference. *Supre v. Ricketts*, 792 F.2d

958, 963 (10th Cir. 1986). Here, even if Plaintiff could show that an alternative treatment or

medication was medically appropriate, Plaintiff still cannot meet his burden of showing that the

State Defendants were unreasonable in relying on the diagnosis of the UMC specialists, and administering medical treatments and prescriptions accordingly. Therefore, the State Defendants are entitled to qualified immunity.

As noted above, it is black-letter law that Plaintiff's "mere disagreement" with the medical diagnosis and treatment strategies does not create a viable Eighth Amendment claim. Reasonable disagreements among health care professionals cannot shock the conscience. *Mosley,* 10 F. App'x at 664-65; *Smith*, 910 F.2d at 502. Here, Plaintiff states that "[he] believes the injury to his hip in the gym caused an impingement resulting in a lack of blood flow to the femoral head causing the bone to die, a condition known as '[a]vascular necrosis,'" and that the State Defendants "refused to provide adequate treatment." (Compl. ¶ 12.) Plaintiff's medical records, however, clearly demonstrate that "[t]he diagnosis, treatment plan, and related services provided to Plaintiff have been medically appropriate," (Roberts Decl. ¶ 11.)

The fact that Plaintiff was examined, diagnosed, and  treated frequently by USP medical staff, specialists at UMC, and the State Defendants, at his request, negates a finding of deliberate indifference. *Estelle*, 429 U.S. 97 at 107 (no cognizable § 1983 claim found where plaintiff was seen by medical personnel on 17 occasions spanning a three-month period); *Hampton v. Keating*, No. 02-6168, 2003 WL 21130016, 66 F. App'x 177, 179 (10th Cir. May 16, 2003) (unpublished) (no deliberate indifference where "plaintiff was provided numerous medical evaluations and treatment in an effort to resolve her problems"); *Witmer v. Powell*, No. 04-7064, 2004 WL 2491765, 114 F. App'x 372, 374 (unpublished) (10th Cir. November 5, 2004) (prison medical staff provided adequate care by seeing plaintiff frequently, allowing him to receive examinations from doctors outside the prison, and consistently prescribing and

15

dispensing pain medication). In light of the frequent care he has received and the fact that Plaintiff has never been in substantial risk of serious harm, Plaintiff cannot show an Eighth Amendment violation and therefore, cannot meet his burden to rebut the State Defendant's presumed qualified immunity. Accordingly, Plaintiff's case should be dismissed as a matter of law.

## CONCLUSION

On its face, Plaintiff's complaint fails to state a claim upon which relief may be granted. The complaint insufficiently alleges facts or a plausible claim. Further, Plaintiff cannot meet his burden to show an Eighth Amendment violation. The State Defendants are entitled to qualified immunity. Summary judgment and dismissal of Plaintiff's Amended complaint, with prejudice, is justified as a matter of law.

DATED:  September 10, 2015

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Scott D. Cheney
SCOTT D. CHENEY
Assistant Utah Attorney General
Attorneys for Defendants, Richard
Garden and Kennon Tubbs